UNITED STATES DISTRICT COURT
DISTRICT OFM INNESOTA

Isaiah Grafe, by his parents and
Next Friends, Judd Grafe and
Deanne Grafe,

Plaintiffs,

v.

MEMORANDUM OPINION
AND ORDER
Civil No. 00-1690 (MJD/JGL)

Independent School District
No. 834, Stillwater, Minnesota,

Defendant.

---

Mark G. Stephenson, Stephenson & Sutcliffe, P.A., for and on behalf of Plaintiffs.

Sara J. Ruff and Joseph J. Langel, Ratwik, Roszak & Maloney, P.A. for and on behalf of Defendant.

---

Before the Court is an action brought pursuant to the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., in which the parties seek review of a decision rendered by a second tier administrative law judge, referred to as the Hearing Review Officer ("HRO"). Defendant Independent School District No. 834 (the "District") seeks an order from this Court reversing the decision of the HRO, and reinstating the decision of the first tier administrative law judge referred to as the Independent Hearing Officer ("IHO"). Plaintiffs seek an order from this Court sustaining the determination of the HRO that the District's individualized education plan ("IEP") was not appropriate, but reversing

FILED JUL 17 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

the HRO's remaining conclusions, and determining that Northern Voices is an appropriate placement for the student, Isaiah Grafe.

BACKGROUND

Isaiah Grafe is a five year-old student who currently resides in Stillwater, Minnesota, which is located within the District. Isaiah was born with auditory neuropathy, a condition that has rendered him profoundly deaf. In October 1998 he received a cochlear implant in the hopes that it would help him hear. After he received the implant, it was learned that he had a condition known as Apraxia, which makes it difficult to process speech.

Prior to his families' move to Stillwater, Isaiah resided in St. Louis, Missouri so that Isaiah and his sister, who also suffers from auditory neuropathy, could attend the Moog School for the Deaf and Hard of Hearing. The Moog School teaches oral education to deaf students, and it involves the process of using the spoken language as a means of communication utilizing visual, auditory and tactile information to develop skills. Funding for the Moog School was provided by the St. Louis School District pursuant to the IEP developed there. A second IEP was completed by the St. Louis School District shortly before the Grafe family moved to Stillwater.

On July 29, 1999, Judd Grafe contacted the District's Director of Student Support Services, Don Schuld, to advise him that the Grafes were moving into the District, and that they had children in need of services. Mr. Grafe told Mr. Schuld that his children had been receiving an oral education, and that they wanted Isaiah to attend a new oral school that was opening in Minnesota, Northern

Voices. The Grafes then sent the District a number of documents, including the IEP developed by the St. Louis School District and records from the Moog School.

An intake meeting was held on August 19, 1999 attended by the Grafes and a number of District employees, such as the District's speech and language pathologist, a licensed teacher of the deaf and hard of hearing and the Director of Northern Voices. At this meeting, the District determined to conduct an assessment to get to know Isaiah and to determine whether the District could provide him an appropriate educational placement. Also during this meeting, the District offered to place Isaiah in its Early Childhood Special Education ("ECSE") classroom at the beginning of the school year, but the parents refused, stating that they were going to enroll him at Northern Voices. The parties agreed that Isaiah would be assessed at Northern Voices, and to delay the assessment for two weeks to allow Isaiah to acclimate to Northern Voices.

Dr. Karen Wills assessed Isaiah for attention deficit disorder, and issued a report to the District. In the report, she noted that no evidence of ADHD was found, but she voiced concern that Isaiah had an impaired level of receptive and expressive language. She opined that strict adherence to an oral approach would place Isaiah at serious risk of increasing social and academic delay. In light of this report, the parents sought advice from other professionals. One such professional, Linda Goddard, recommended cued speech as a means of communicating and teaching Isaiah, which is a method that provides aid to lip reading. The parents have used cued speech in the home, and are pleased with the results. The oral program at Northern Voices does not rely on cued speech.

A meeting to discuss Isaiah's assessment was held on October 29, 1999. At this meeting, the District informed the parents that they believed they could meet Isaiah's needs, and discussed possible programs. The Grafes rejected all programs but the ECSE programs. They nonetheless indicated that they wanted Isaiah to stay at Northern Voices. An IEP meeting was then held on November 19, 1999. Prior to this meeting, the Grafes had an opportunity to tour the District's ESCE program. The attendees at the meeting worked for nearly two hours on drafting goals and objectives. The IEP was not completed, however, because attendees had to go to other meetings. The District proposed a second IEP meeting, but the parents did not believe one was necessary and asked the District to complete the IEP and send it to them. At this meeting, the parents also provided the District their proposed IEP.

The District did complete the IEP, and sent it to the Grafes. The District's IEP places Isaiah in the Little Learners classroom with approximately six or seven other children in the morning. This session would include one-on-one time with a speech pathologist, ECSE teacher and two paraprofessionals. Isaiah would then have one-on-one training with either a speech language pathologist or a teacher of the deaf and hard of hearing, then lunch. In the afternoon, Isaiah would again attend the Little Learners classroom, with similar one-on-one time with a speech pathologist.

The Grafes requested a due process hearing. Upon agreement of the parties, the IHO, Dr. Robert Miller, agreed to conduct a special education due process hearing. The District initially filed a motion to dismiss on the basis that the

Grafes never enrolled Isaiah in the District, therefore he was not entitled to special educational services paid for by the District. This motion was denied by decision of the IHO. Thereafter, the District appealed this denial to the Commissioner of the Minnesota Department of Children, Families and Learning ("MDCFL") for an interlocutory appeal to a Hearing Review Officer. The due process hearing was stayed pending the Commissioner's decision. On March 6, 2000, the Commissioner denied the District's request for an interlocutory appeal.

On April 11-14, and 17-18, 2000, the due process hearing was conducted before the IHO. The IHO heard testimony from numerous employees of the District, Northern Voices and expert witnesses, such as audiologists and a trainer of teachers for the deaf and hard of hearing. The IHO issued his Findings of Fact, Conclusions of Law and Decision on May 8, 2000. The IHO made detailed findings, and from these findings determined that the District's IEP afforded Isaiah a Free and Appropriate Public Education ("FAPE"). The IHO further held that the "District's proposed IEP will be implemented should the Student Return to the Stillwater School system. Some support from the audiologist is in order on an "as needed" basis once the Student beings the program."

On May 26, 2000, the Grafes filed an appeal of the IHO's decision with the Commissioner of the MDCFL. An HRO was assigned to the matter on June 2, 2000, and on June 29, 2000, the HRO rendered her decision. In rendering her decision, the HRO found that the IHO's findings relevant to the appeal were supported by a preponderance of the evidence. The HRO made additional findings based on the testimony of the audiologists that the sound that Isaiah

receives is vulnerable to background noise. One audiologist, Dr. Berlin, testified that carpeted floors, sound treated ceilings and draperies, and a limit of 7-10 children in a room was essential to Isaiah's educational placement. The HRO further found that the District had not had an audiologist assess the ECSE classroom prior to issuing its proposed IEP. Based on the findings of the IHO, as well as the additional findings concerning the audiologist assessment of the classroom, the HRO determined that the District had failed to meet its burden of proof to show that the proposed placement was appropriate because the IEP did not contain "information as to the appropriateness of the ECSE program for Student's audiological needs, i.e. is it quiet enough so the Student can hear?" The HRO determined that based on the finding that the District's proposed IEP was inappropriate; the conclusions of the IHO were reversed. The HRO further found that the Grafes had failed to show that the proposed private placement at Northern Voices was appropriate, finding that Isaiah receives no speech or language services there, and the staff does not use cued speech, services Isaiah needs as indicated by the expert witnesses that testified at the hearing.

Standard of Review

When reviewing the decision of an administrative hearing officer, IDEA requires that the district court independently determine whether the requirements of IDEA have been met by the school district, based on a preponderance of the evidence. Petersen v. Hastings Public Schools, 31 F.3d 705, 707 (8th Cir. 1994)(citing 20 U.S.C. § 1415(e)(2)). The United States Supreme Court has

developed a two-part test for evaluating challenges to a school district proposed IEP:

> First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

Board of Education v. Rowley, 458 U.S. 176, 206-207 (1982). In resolving the second inquiry, the court cannot "substitute [its] own notions of sound educational policy for those of the school authorities". Rowley, at 206. Due weight must be given the administrative proceedings. Id. It is not necessary that the district maximize the potential of each handicapped child, rather, the court should determine whether the child will benefit educationally from the district proposed IEP. Rowley, at 199-200.

Analysis

Initially, Plaintiffs argue that the District did not timely assess Isaiah and develop an IEP prior to the start of the school year. The IHO addressed this issue in detail, and found that the District had shown by a preponderance of the evidence that it had complied with the procedural requirements of the IDEA and state law. Specifically, the IHO found that the Grafes had been properly notified of their rights under IDEA, and were properly notified of all assessment meetings, that the District included the parents in the placement process, that an appropriate team was assembled to develop an appropriate IEP, and that the assessment was timely. IHO Conclusion No. 8(a)-(e). The IHO further found that the District was

not obligated to adopt the IEP developed by the St. Louis School District, relying on Michael C. v. The Radnor Township School District, 202 F.3d 642 (3rd Cir. 2000). In that case, the court held:

> That the IDEA's overall scheme and the precedent interpreting that scheme leads inexorably to the conclusion that when a student moves from State A to State B, any prior IEP in effect in State A need not be treated by State B as continuing automatically in effect.

Id. at 651. This holding was based on the court's recognition that Congress left primary responsibility for providing a FAPE and for implementing IDEA to the states. Thus, states must be given the opportunity to determine whether the out-of-state IEP is consistent with its policies and mandates. Id. at 650.

Plaintiffs have not shown, however, nor argue that the Missouri IEP was consistent with Minnesota's policies and mandates. Accordingly, because the District was under no obligation to automatically adopt Missouri's IEP, and because there is no showing that the IEP is consistent with Minnesota policies and mandates, this Court finds that the District did not err in not automatically adopting the Missouri IEP.

Based on the record, the Court finds that the IHO's determinations as to the District's compliance with the procedural requirements of the IDEA and state law are supported by a preponderance of the record.

The next determination to be made is whether the District developed an IEP that was reasonably calculated to provide educational benefits to Isaiah. The Court notes that it has before it conflicting findings and conclusions from the IHO and the HRO. The HRO adopted the relevant factual findings of the IHO, but

made the additional finding that the IEP was not complete because an audiologist had not completed an assessment of the ECSE classroom. The HRO further found:

> While the goals and objectives and the amount and types of services contained in the proposed IEP are appropriate, the adaptations portion of the IEP was not completed. Specifically, no information as to the appropriateness of the ECSE program for Student's audiological needs, i.e. is it quiet enough so Student can hear. While the District personnel did testify as to a willingness to assess the room, no such assessment has ever been performed. District Director of Student Support Services further testified District would modify the room if necessary. However, the record is clear that there are variable in the noise level in the room, which may be beyond the District's control, e.g. control of the other children in the room. Therefore there is no showing in this record that the proposed placement meets, or can be adapted to meet, the Student's need for a low level of background noise.

Finding No. 23, HRO Decision dated June 29, 2000.

The District argues that the HRO improperly reweighed the evidence in reaching the conclusion that the District's IEP was not appropriate because the District did not make a showing that its proposed placement meets, or could be adapted to meet, Isaiah's need for low level background noise. The District further argues that this conclusion is also contrary to the evidence contained in the record. The Court agrees.

For example, the record contains evidence that the District has the services of a licensed audiologist, on an as-needed basis, with experience working with the children with cochlear implants, and has worked with such children to assist them to discriminate different speech sounds. IHO Finding No. 54. There is also evidence that the audiologist would conduct a classroom assessment, and make the necessary recommendations regarding noise reduction. Id. Mr. Schuld also testified that the District would be willing to make modifications to the classroom

if suggested by the audiologist. IHO Finding No. 59. Evidence was also presented in the form of expert testimony that the use of carpeting, sound treated ceilings, draperies, and use of sound field systems could be used to reduce noise, as well as limiting the number of children in the room to 7 to 10. IHO Finding Nos. 59 and 60.

From this evidence the IHO could properly conclude that the District's proposed placement could be adapted to meet Isaiah's audiological needs. By reaching the opposite conclusion, however, the HRO improperly reweighed the evidence. As noted by this Court previously, reweighing of evidence is appropriate only upon de novo review. Independent School Dist. No. 283 v. S.D., 948 F. Supp. 860, 870 & n. 5 (D. Minn. 1995) aff'd 88 F.3d 556, 561 (8th Cir. 1996)(noting that the practice of the HRO to temper the factual findings of the IHO is at odds with the general rule that "where an inference drawn by an administrative factfinder is within a 'zone of choices' then that determination may not be rejected on review unless it is unsupported by substantial evidence on the record as a whole.") In its opinion on appeal from the district court's order in S.D., the Eighth Circuit held:

> Here, the district court faced the task of choosing between conflicting findings and conclusions of the hearing officer and hearing review officer. The court reviewed the administrative record and, expressly applying the statutory preponderance standard, credited the hearing officer's findings because that fact-finder had an 'opportunity to observe the demeanor of the witnesses and to render believability determinations.' The court then rejected the review officer's analysis because it did not give sufficient weight to the views of the School District's professional educators. That review complied with § 1415 (e)(2).

88 F.3d at 561.

This Court has conducted an independent review of the record, and finds that, similar to the situation presented in S.D., the HRO in this case did not give sufficient weight to the views of the District's educators and to the views of the experts. The IHO's determination that the District's proposed IEP was appropriate is clearly supported by a preponderance of the evidence.

Although Plaintiffs submitted an extensive brief that raises many issues, it is clear that the central issue in this case, from Plaintiff's perspective, concerns the acoustics of the ECSE classroom. Plaintiffs argue that the ECSE classroom is noisy, while the classrooms at Northern Voices are quiet enough to ensure the Isaiah will hear. As this Court has found however, the record contains evidence that the District has the necessary information to modify the ECSE classroom to meet Isaiah's audiological needs, and that the District is willing to make those modifications. It is irrelevant that Northern Voices may be quieter that the District's ECSE classroom. What is relevant is whether the District can modify the ECSE classroom to allow Isaiah to hear, and thus receive educational benefits. Because the record supports a finding that the District can and will modify the ECSE classroom appropriately, the IHO's findings and conclusions on this issue are supported by a preponderance of the evidence.

IT IS HEREBY ORDERED THAT the Findings of Fact, Conclusions of Law and Decision of the Independent Hearing Officer, and that portion of the Findings of Fact, Conclusions of Law and Decision of the Hearing Review Officer finding the District complied with the procedural requirements of the IDEA, and that the

District afforded the Student a Free and Appropriate Public Education is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Date: July 17, 2001

Michael J. Davis
Michael J. Davis
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

**Please forward this announcement to the recipient of this fax.**

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500